UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CHRISTOPHER KNIGHT,

        Plaintiff,

v.

HEIDI WASHINGTON et al.,

        Defendants.
_____/

Case No. 1:25-cv-964

Hon. Hala Y. Jarbou

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.) Under the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's federal claims against Defendants Washington, Macauley, and Unknown Parties for failure to state a claim. Any state law claims against Defendants Washington, Macauley, and Unknown Parties will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims. The Court will also dismiss, for failure to state a claim, Plaintiff's official capacity claims,

as well as any intended personal capacity claims for injunctive relief, against Defendant Al-Ani. Plaintiff's personal capacity Eighth Amendment claims for damages, as well as his state law claims, against Defendant Al-Ani remain in the case.

## Discussion

### I.  Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains, however, occurred at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. Plaintiffs sues MDOC Director Heidi Washington, as well as the following IBC personnel: Warden Matt Macauley, Corrections Officer Unknown Al-Ani, and Unknown Parties, referred to as Unknown Corrections Officers. (Compl., ECF No. 1, PageID.3.) Plaintiff indicates that he is suing all Defendants in their official and personal capacities. (*Id.*)

Plaintiff alleges that on November 3, 2023, he "became involved in a [p]hysical alteration with another inmate on the small yard of Housing Unit 5." (*Id.*, PageID.4.) The altercation ended when the other inmate was tased by the responding officer. (*Id.*) Plaintiff claims that by this time, he and the other inmate "were on the ground already," and that Plaintiff was on his back. (*Id.*) As soon as the other inmate was tased, Plaintiff "rolled over onto his stomach and placed his hands behind his back to await being handcuffed." (*Id.*)

Plaintiff alleges that Defendant Al-Ani deployed his taser at Plaintiff. (*Id.*) Plaintiff was "already on the ground in a submissive position and offering no resistance. (*Id.*, PageID.5.) Plaintiff was then handcuffed and "rolled unceremoniously on to his back." (*Id.*) "While the Plaintiff was being raised forcibly from the ground by the Officers, the Plaintiff felt a sharp pain

as the officers grabbed his hand and twisted it to apply a pressure point intended to force [Plaintiff] to be submissive." (*Id.* (capitalization in original retained).)

Plaintiff was escorted to healthcare, where he reported an injury to his finger. (*Id.*) Plaintiff was instructed to fill out a kite to be seen. (*Id.*) Plaintiff submitted his healthcare kite the next day, along with a Step I grievance. (*Id.*) Plaintiff contends that he suffered a dislocated and broken finger, and that "[d]elays in treatment caused the injury to become exa[]cerbated." (*Id.*) Plaintiff suggests that he has "limited range of motion in the [e]ffected finger/hand and suffers prolonged pain from the injury." (*Id.*)

Plaintiff contends that as Warden of IBC, Defendant Macauley "was directly responsible for the actions of his employees and the oversight of the day-to-day operations and training of the same," making him "culpable for any actions which [v]iolate the civil or statutory rights of the prisoners under his care." (*Id.*) Plaintiff alleges further that as Director of the MDOC, Defendant Washington "failed to correct or address the issue which precipitated this suit coming before the Court." (*Id.*)

Based upon the foregoing, Plaintiff asserts Eighth Amendment excessive force claims, as well as claims for relief pursuant to the Michigan Constitution, the Michigan Administrative Code, and various MDOC Policy Directives.[1] (*Id.*, PageID.4.) Plaintiff seeks injunctive relief, as well as compensatory and punitive damages. (*Id.*, PageID.6.)

---

[1] The Court notes that Plaintiff vaguely references delays in medical treatment, but his complaint is devoid of any facts suggesting that any of the named Defendants were personally responsible and involved in those delays. (Compl., ECF No. 1, PageID.5.) The Court, therefore, does not construe Plaintiff's complaint to assert any Eighth Amendment claims premised upon a lack of adequate medical treatment. And, even if Plaintiff had intended to raise such a claim, this claim would be dismissed for failure to state a claim because Plaintiff alleges no facts to suggest that any of the named Defendants were involved in Plaintiff's alleged delayed receipt of medical treatment.

3

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

### A.     Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

4

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). As set forth *supra*, the Court has construed Plaintiff's complaint to assert Eighth Amendment excessive force claims.

### 1.  **Official Capacity Claims**

Plaintiff has sued Defendants in both their official and personal capacities. (Compl., ECF No. 1, PageID.3.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). And, regardless, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013). Similarly, Plaintiff may not seek monetary damages against Defendants in their official capacities. *Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.").

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking prospective injunctive or declaratory relief is not treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Ex parte*

*Young*, 209 U.S. 123, 159–60 (1908)). The *Ex parte Young* doctrine "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign immunity purposes." *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (citation omitted). The Supreme Court has cautioned that "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

While Plaintiff seeks injunctive relief, Plaintiff's complaint does not set forth any allegations suggesting that any of the named Defendants are engaged in "an ongoing violation of federal law." *See id.* Furthermore, with respect to Plaintiff's claims for injunctive relief against Defendants Macauley, Al-Ani, and Unknown Parties, the Sixth Circuit has held that transfer to another correctional facility moots a prisoner's claims for injunctive and declaratory relief. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Here, Plaintiff is no longer confined at IBC, which is where he avers that Defendants Macauley, Al-Ani, and Unknown Parties were employed at the time of the incident. Plaintiff's requests for injunctive relief against Defendants Macauley, Al-Ani, and Unknown Parties are, therefore, moot.[2] Accordingly, the Court will dismiss all of Plaintiff's official capacity claims.

---

[2] The mooting effect of Plaintiff's transfer to DRF also applies to any claims for injunctive relief against Defendants Macauley, Al-Ani, and Unknown Parties in their respective personal

### 2. Personal Capacity Claims

#### a. Claims Against Defendants Washington and Macauley

As set forth above, Plaintiff contends that as Warden of IBC, Defendant Macauley "was directly responsible for the actions of his employees and the oversight of the day-to-day operations and training of the same," making him "culpable for any actions which [v]iolate the civil or statutory rights of the prisoners under his care." (Compl., ECF No. 1, PageID.5.) Plaintiff alleges further that as Director of the MDOC, Defendant Washington "failed to correct or address the issue which precipitated this suit coming before the Court." (*Id.*)

Plaintiff essentially seeks to hold Defendants Macauley and Washington liable because of their respective supervisory positions within the MDOC. Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *See Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

---

capacities. Accordingly, any intended claims for injunctive relief against Defendants Macauley, Al-Ani, and Unknown Parties in their respective personal capacities will also be dismissed.

7

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege facts suggesting that Defendants Macauley and Washington encouraged or condoned the conduct of the other Defendants, or authorized, approved, or knowingly acquiesced in that conduct. Rather, Plaintiff suggests only that Defendants Macauley and Washington failed to supervise, which, as set forth in *Peatross*, cannot be actionable without further allegations that Defendants Macauley and Washington "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Peatross*, 818 F.3d at 242 (quoting *Shehee*, 199 F.3d at 300). Plaintiff has failed to do so. Accordingly, for the foregoing reasons, Defendants Macauley and Washington will be dismissed for Plaintiff's failure to state a cognizable claim for relief against them.

### b.    Eighth Amendment Excessive Force Claims

Plaintiff seeks to hold Defendants Al-Ani and Unknown Parties liable for violating his Eighth Amendment right to be free from the use of excessive force.

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981); *see also Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1,

8

9 (1992). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)).

There is an objective component and a subjective component to this type of Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). The objective component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

With respect to use of a taser on an inmate, an officer's failure to comply with training alone—while perhaps negligent—does not state an Eighth Amendment claim. *See Daniels v. Williams*, 474 U.S. 327, 333 (1986). Moreover, prisons and prison officials have a legitimate interest in maintaining security, order, and in having prisoners obey orders. *Bell v. Wolfish*, 441 U.S. 520, 560 (1979); *Caldwell v. Moore*, 968 F.2d 595, 599–601 (6th Cir. 1992). "Corrections officers do not violate a prisoner's Eighth Amendment rights when they apply force 'in a good-faith effort to maintain or restore discipline.'" *Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (quoting *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004)). A prison official's use of a taser to maintain security and order, such as the use of a taser upon responding to a physical fight between prisoners, does not, on its own, state an Eighth Amendment claim. *See, e.g.*, *Caldwell*, 968 F.2d at 600–02 (collecting cases) (holding that the use of a stun gun on a disruptive prisoner to restore order and discipline was not an Eighth Amendment violation); *Jasper v. Thalacker*, 999 F.2d 353, 354 (8th Cir. 1993) (concluding that the use of a stun gun to subdue a noncompliant prisoner did not violate the Eighth Amendment when the prisoner failed to show that the officers used it "maliciously and sadistically to cause harm" (citation omitted)); *Michenfelder v. Sumner*, 860 F.2d 328, 336 (9th Cir. 1988) (upholding use of a taser on a prisoner for failure to comply with a strip search); *Gresham v. Steward*, No. 13-10189, 2014 WL 4231295, at *9–10 (E.D. Mich. Aug. 27, 2014) (finding that the use of a taser on a prisoner who refused to stop punching another prisoner even after ordered to do so was not excessive given the defendant's "interest in the threat posed by the altercation to other inmates, prison workers, administrators, and visitors" (citation omitted)).

Here, Plaintiff contends that after the other inmate with whom he was fighting had been tased, Plaintiff "rolled over onto his stomach and placed his hands behind his back to await being

10

handcuffed." (Compl., ECF No. 1, PageID.4.) However, "without warning or justification," Defendant Al-Ani used his taser on Plaintiff, even though Plaintiff "was already on the ground in a submissive position and offering no resistance." (*Id.*, PageID.4–5.) While the use of a taser on its own may not state an Eighth Amendment claim, Plaintiff has alleged facts supporting an inference that Defendant Al-Ani's response was excessive: the fight had already been broke up, Defendant Al-Ani gave no warning, Plaintiff was not resisting, and Plaintiff was on the ground with his hands behind his back waiting to be handcuffed. Although Plaintiff has by no means proven that Defendant Al-Ani acted maliciously and sadistically, the Court will not dismiss Plaintiff's personal capacity Eighth Amendment excessive force claim for damages against Defendant Al-Ani on initial review.

Plaintiff claims further that "[w]hile he was being raised forcibly from the ground by the Officers, the Plaintiff felt a sharp pain as the officers grabbed his hand and twisted it to apply a pressure point intended to force [Plaintiff] to be submissive." (Compl., ECF No. 1, PageID.5 (capitalization in original retained).) Plaintiff contends that he suffered an injury to his hand— namely, a dislocated and broken finger. (*Id.*) Plaintiff's reference to "Officers," however, is insufficient to implicate any of the Unknown Parties because "[s]ummary reference to a single, five-headed 'Defendants' [or officers or staff] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted). Plaintiff does not specifically mention Defendants Unknown Parties in his complaint, and so his claims against Defendants Unknown Parties fall short of the minimum pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. *See* Fed. R. Civ. P. 8(a)(2) (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief").

    **B.**     **State Law Claims**

Plaintiff also indicates that he is asserting claims pursuant to the Michigan Constitution, the Michigan Administrative Code, and various MDOC policy directives. (Compl., ECF No. 1, PageID.4.) As an initial matter, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertions that Defendants violated state law fail to state a claim under § 1983.

Further, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Here, because the Court has dismissed Plaintiff's federal claims against Defendants Washington, Macauley, and Unknown Parties, the balance of the relevant considerations weights against the continued exercise of supplemental jurisdiction with respect to Plaintiff's state law claims against those Defendants. The Court, therefore, will dismiss Plaintiff's state law claims against Defendants Washington, Macauley, and Unknown Parties. However, because Plaintiff's Eighth Amendment personal capacity claims for damages against Defendant Al-Ani remain in the case, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims against Defendant Al-Ani.

**Conclusion**

The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.) Moreover, having conducted the review required by the PLRA, the Court determines that Plaintiff's federal claims against Defendants Washington, Macauley, and Unknown Parties will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b) and 42 U.S.C. § 1997e(c). Any state law claims against Defendants Washington, Macauley, and Unknown Parties will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims. The Court will also dismiss, for failure to state a claim, Plaintiff's official capacity claims, as well as any intended personal capacity claims for injunctive relief, against Defendant Al-Ani. Plaintiff's personal capacity Eighth Amendment claims for damages, as well as his state law claims, against Defendant Al-Ani remain in the case.

An order consistent with this opinion will be entered.

Dated: September 18, 2025          /s/ Hala Y. Jarbou
                                    HALA Y. JARBOU
                                    CHIEF UNITED STATES DISTRICT JUDGE